UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRENT MORROW, | ) | Case No. 1:18CV0403 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |
| | ) | |

Plaintiff Trent Lavell Morrow ("Morrow" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is affirmed.

# I. PROCEDURAL HISTORY

On November 23, 2012, Morrow protectively filed applications for a period of disability and DIB, and on that same date, an application for SSI benefits, both applications alleging disability beginning October 17, 2012. (R. 8, Transcript ("tr."), at 174, 321-327, 328-334, 360-362, 363-370.) Morrow's applications were denied initially and upon reconsideration. (R. 8, tr., at 115-116, 117-142, 143-144, 145-170, 174, 198-200, 201-203.) Thereafter, Morrow requested a hearing before an administrative law judge. (R. 8, tr., at 213.)

The ALJ held the first hearing on December 8, 2014. (R. 8, tr., at 31-57.) Morrow appeared at the hearing, was represented by counsel, and testified. (*Id.* at 33, 36-50.) A vocational expert ("VE") attended the hearing and provided testimony. (*Id.* at 33, 51-56.)

On February 13, 2015, the ALJ issued her first decision, applying the standard five-step sequential analysis to determine whether Morrow was disabled. (R. 8, tr., at 174-186; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).) Based on her review, the ALJ concluded Morrow was not disabled. *Id.* at 185.

The Appeals Council ("AC") granted Morrow's request for review. (R. 8, tr., at 244-247.) The AC notified Morrow that, absent new or material evidence, the AC planned to issue a partially favorable corrective decision finding him disabled beginning April 4, 2014, for SSI benefits, but not before that date. *Id.* at 246. Subsequent to a response from claimant's counsel, the AC vacated the first hearing decision, and remanded the case to the ALJ for a new hearing. *Id.* at 192-197. The

AC set forth detailed guidance regarding what issues should be addressed in the new proceedings.  *Id.* at 11-12, 195.

The same ALJ held new hearings on September 19, 2016, and January 23, 2017.  (R. 8, tr., at 58-69, 70-114.)  Morrow appeared at the hearings, was represented by counsel, but did not testify at the new hearings.  (*Id.* at 59, 60, 72-73.)  A new VE also attended the January 2017 hearing and provided testimony. (*Id.* at 72, 105-112.)  Testimony was also taken from a medical expert at that hearing.  (*Id.* at 73-104, 113.)

On March 24, 2017, the ALJ issued her second decision, applying the standard five-step sequential analysis to determine whether Morrow was disabled. (R. 8, tr., at 11-23; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a).)  The ALJ also acknowledged the directives from the AC concerning matters to be addressed. *Id.* at 11.  Based on her review, the ALJ again concluded Morrow was not disabled. *Id.* at 12, 22-23.  The Appeals Council denied Morrow's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  *Id.* at 1-4. Morrow now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.

Morrow presents the following legal issues for the court's review:

1.  The ALJ erred in finding plaintiff capable of a range of light work and as a result, the ALJ's residual functional capacity assessment lacks substantial evidence.

2.  Substantial evidence demonstrates the need for a cane for all ambulation, balance, and support.

(R. 13, PageID #: 2017.)

## II.  PERSONAL BACKGROUND INFORMATION

Morrow was born in 1964, and was 48 years old on the alleged disability onset date.  (R. 8, tr., at 21, 321, 360.)  Accordingly, Morrow was considered a younger individual age 18-49 for Social Security purposes.  *See* 20 C.F.R. §§ 404.1563, 416.963.  He has at least a high school education, and is able to communicate in English.  (R. 8, tr., at 21, 51, 363, 365.)  Morrow had past work as a driving instructor.  *Id.* at 21, 38, 51, 105.

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Morrow's brief alleging error by the ALJ.  As stated above, Morrow filed applications for a period of disability and DIB, and an application for SSI benefits on November 23, 2012.  (R. 8, tr., at 174, 321-327, 328-334.)  In his application, Morrow listed his physical or mental conditions that limit his ability to work as:  "stroke, aneurism."  *Id.* at 364. On his Function Report, Morrow stated that he could walk about 50 feet before needing to stop and rest for five minutes.  (R. 8, tr., at 376.)  Morrow indicated that

---

[1] The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

he used a walker (not a cane) which had been prescribed by a doctor in November 2012. *Id.* at 377.

State agency reviewing physician Dmitri Teague, M.D., prepared a physical RFC assessment on April 13, 2013. (R. 8, tr., at 122-124.) Dr. Teague determined Morrow was capable of light work, with the ability to stand or walk about six hours, and the ability to sit for six hours, of an eight-hour workday. *Id.* at 123. Dr. Teague opined that Morrow can frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, or crawl; and can frequently balance. *Id.* Dr. Teague stated that Morrow should avoid concentrated exposure to vibrations due to balance issues, and should avoid all exposure to hazardous machinery and heights. *Id.* at 124. On reconsideration on July 25, 2013, state agency reviewing physician Michael Delphia, M.D., concurred with Dr. Teague's physical RFC. *Id.* at 151-153.

Virginia Edwards, Certified Nurse Practitioner ("CNP"), completed a medical source statement on Morrow's physical capacity on December 2, 2013. (R. 8, tr., at 713-714.) Edwards indicated that lifting and carrying were affected by Morrow's impairment of imbalance, without stating how may pounds he could lift or carry. *Id.* at 713. Likewise, Edwards indicated that standing and walking were affected by Morrow's impairment, without stating how many hours in a workday he could stand or walk. *Id.* Edwards noted that Morrow had no clear ataxia, but walked slowly while looking carefully at the ground. *Id.* Sitting was not affected by his

impairment. *Id.* Edwards indicated that Morrow could rarely climb, balance, stoop, crouch, kneel, or crawl, because of positive Romberg findings. *Id.*

Edwards assessed that Morrow could frequently reach, handle, feel, push or pull, and use fine and gross manipulation. (R. 8, tr., at 714.) She indicated that Morrow needed environmental restrictions for height and moving machinery. *Id.* Edwards did not assess that Morrow had the need for any particular amount of rest periods during the workday. *Id.* Edwards wrote that a cane and a walker had been "prescribed/provided by outside facility." *Id.* Finally, Edwards indicated that Morrow needed an at-will sit/stand option, and that he experienced severe headaches. *Id.*

On January 8, 2014, Naveed Khokhar, M.D., completed a medical source statement on Morrow's mental capacity. (R. 8, tr., at 823-824.) In the area of making occupational adjustments, Dr. Khokhar assessed that Morrow had a poor capability for maintaining attention and concentration for extended periods of 2-hour segments, for functioning independently without special supervision, for dealing with work stress, and for completing a normal workday without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable amount of rest periods. *Id.* Morrow had a fair ability to deal with the public, and to work in coordination with, or in proximity to, others without being unduly distracted or distracting. *Id.* at 823. He had a good capability in six other areas. *Id.*

Regarding Morrow's intellectual functioning, Dr. Khokhar assessed that Morrow had a fair ability to understand, remember and carry out detailed but not complex job instructions. (R. 8, tr., at 824.) He had a good ability to understand, remember and carry out both complex and simple job instructions. *Id.* Dr. Khokhar also assessed that claimant had a fair ability to behave in an emotionally stable manner, and a fair ability to leave home on his own. *Id.* Morrow was assessed as good in other areas of making personal and social adjustment. *Id.* Finally, Dr. Khokhar commented that "Patient is suffering with depressed mood secondary to poor functionality & multiple psychosocial stressors." *Id.*

On March 5, 2014, physical therapist Maureen Farrell prepared a Physical Therapy Neurological Evaluation. (R. 8, tr., at 858-863.) Morrow reported to PT Farrell that he used a cane at times, although he had "no device in home." *Id.* at 858. He also reported using a walker for longer distances. *Id.* The therapist assessed his functional mobility as slow and guarded. *Id.* at 862. She noted he was able to walk for 100 feet with a walker in the lot, and ten feet in the clinic with no device but was unsteady. *Id.* Farrell assessed that Morrow had a recent increase in dizziness and a decline in balance. *Id.* She said the patient would benefit from further physical therapy for balance, coordination, strengthening exercises, and habituation. *Id.* at 862-863.

At the December 2014 hearing, the ALJ noticed that Morrow came in with a cane, and asked whether it was a prescribed cane, from a doctor. (R. 8, tr., at 45.) Morrow responded that it was not, but that, "A friend gave it to me ever since I got

7

home out of physical, out of rehab." *Id.* Morrow testified that he has had issues with balance since he had the stroke. *Id.* at 39. He said that his other main problems included concentration, dizziness, and persistent headaches. *Id.* at 49-50.

Morrow presented to Kevin Nash, CNP, on March 3, 2015, for hypertension. (R. 8, tr., at 1229.) At that visit, Nash indicated that Morrow was "currently using cane for ambulation that came from his friend," and the patient reported that his stroke caused imbalance. *Id.* at 1233. Nash noted that, "Patient needs cane issued form at this time." *Id.* Nash indicated "abnormality of gait." *Id.* at 1235.

Physical therapist Farrell prepared an updated Physical Therapy Neurological Evaluation on October 20, 2016. (R. 8, tr., at 1930-1936.) Farrell noted that Morrow complained of a decrease in balance. *Id.* at 1930. The claimant stated that he walked with a cane at home, and he appeared at the appointment using a cane. *Id.* at 1930, 1932. The PT analyzed his gait as slow and mildly unsteady. *Id.* at 1934. Morrow tested to be in fall risk range on the BERG balance scale. *Id.* The therapist assessed decreased balance, decreased ambulation, decreased functional ability and endurance, and a lack of a home exercise program. *Id.* She recommended increased PT therapeutic exercises and bike riding. *Id.* at 1934-1935. PT Farrell assessed Morrow's prognosis for therapy as good. *Id.* at 1934.

Medical Expert Testimony

Diana Pi, M.D., a board-certified internist, testified as a medical expert at the January 2017 hearing. (R. 8, tr., at 73-104, 113; *see generally id.*, at 1961-1963.) At

the request of the ALJ, Dr. Pi presented a narrative summary of the pertinent information in Morrow's medical record. *Id.* at 74.

Dr. Pi reported that Morrow had a cerebellar stroke in October 2012, followed by a decompression procedure, a craniotomy. (R. 8, tr., at 75, 93.) The doctor testified that Morrow had made an excellent recovery, that his physical examinations subsequent to his recovery have always shown normal motor function and great strength and coordination. *Id.* at 75, 94. Dr. Pi testified that his remaining deficit from the stroke was balance, which was "graded as a mild ataxia." *Id.* at 75, 83, 94. Ataxia means that if he does not use a cane, and walks a long time, he will tend to veer to one side. *Id.* at 83. Dr. Pi testified that the record showed he walks very steadily with his cane, and he has only one episode of a recorded fall. *Id.* at 75, 84. She said that multiple providers have found that "his walking issue is mild." *Id.* at 102.

Dr. Pi noted that Morrow does not have a very consistent home therapy regimen for strengthening and conditioning. (R. 8, tr., at 75.) Dr. Pi opined that he should be doing physical therapy and more exercise, because that can improve his deconditioning, which the doctor characterized as "totally reversible." *Id.* at 84-85. Dr. Pi testified that Morrow "really doesn't have any weaknesses," that his problem "is one of balance," and his condition would improve if he was biking, swimming or using weight lifting machines. *Id.* at 85-86. Dr. Pi opined that with an exercise regimen, Morrow could probably get rid of the cane. *Id.* at 91.

Dr. Pi testified that Morrow "probably doesn't need a cane" but to be safe, at present he should walk with a cane because he was not as active as he used to be. (R. 8, tr., at 90.) The ALJ inquired about a work environment, and Dr. Pi responded that claimant only needed a cane for walking greater than 50 feet. *Id.* at 91; *see generally id.* at 376 (function report: can walk 50 feet). The doctor stated that Morrow can walk safely, without a cane, for about 50 feet, even while carrying up to twenty pounds. *Id.* at 104.

Dr. Pi indicated that Morrow has daily headaches and also some dizziness. (R. 8, tr., at 76.) The doctor identified the most comprehensive neurology report as that of Clinical Nurse Practitioner Edwards, in July 2013. *Id.*, citing Exh. 12F/26. The claimant has had a headache disorder since childhood. *Id.* Under questioning by counsel, Dr. Pi acknowledged that the claimant's chronic headaches had been treated unsuccessfully in a variety of ways. (R. 8, tr., at 95-97.) The doctor explained that Morrow was "very focused on headache," and that "if you focus on headache, [and] you go to doctors all the time, they will try to do different things." *Id.* at 97. Dr. Pi commented that, "There are people who [have] chronic headache, they don't go to doctors, they learn how to manage this." *Id.*

The doctor also noted a period in early 2016 when claimant's headaches became manageable. (R. 8, tr., at 78, citing, *e.g.*, Exh. 15F/563; 80-81.) Morrow was going to the gym regularly, was seeing friends, was taking his medications, and he had little or no anxiety or depression. *Id.* at 78, 81. Dr. Pi's opinion was that the

10

headaches are treatable, and that Morrow's prognosis is good, if he would exercise consistently, and make some lifestyle changes. *Id.* at 82.

Insofar as the headaches affecting his ability to work, Dr. Pi noted that multiple mental status exams and psychological evaluations "all say . . . even with his headache, his concentration is fine. His attention is fine. He has good working memory." (R. 8, tr., at 97.) Dr. Pi commented that she was "puzzled why he has never been brought in vocational rehab" which would assist him in being able to go back to work. *Id.* at 98. The doctor stated that, despite his headaches, "he has good attention, good concentration, he comprehends fine and his memory is adequate for work and he has very good knowledge, abstract and concrete." *Id.*

Dr. Pi indicated that Morrow had some minor medical issues as well. (R. 8, tr., at 78-79.) Morrow has diabetes, which is well controlled on medication; very mild asthma, which responds well to medications; and sleep apnea, which is well controlled. *Id.* Because these conditions are all mild and/or well-controlled, Dr. Pi did not list those conditions as MDIs. *Id.* at 79.


## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her March 24, 2017, decision:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2.  The claimant has not engaged in substantial gainful activity since October 17, 2012, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: status post-stroke with related mood disorder; obesity; hypertension; chronic kidney disease (state II to III); and asthma/sleep apnea (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in  20 CFR 404.1567(b) and 416.967(b) but should never climb any ladders, ropes or scaffolds; can frequently climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; and frequently balance.  This individual should avoid concentrated exposure to noise, vibration, and all exposure to unprotected heights, and hazardous moving machinery.  This person should avoid working in jobs that require a fast production pace, high production quantity, but goal-oriented work would be acceptable.  This individual should use a cane for ambulating distances greater than 50 feet.  As for mental, this individual can understand, remember, and apply information.  This individual is limited to work that is routine in nature with few changes.  Limiting interaction with others to superficial-type interactions, which are defined as no mentoring, no arbitration, and no conflict resolution.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on * * * , 1964, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from October 17, 2012, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 8, tr., at 14, 15, 16-17, 21, 22.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a

reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

Morrow presents the following legal issues for the court's review:

1. The ALJ erred in finding plaintiff capable of a range of light work and as a result, the ALJ's residual functional capacity assessment lacks substantial evidence.

2. Substantial evidence demonstrates the need for a cane for all ambulation, balance, and support.

(R. 13, PageID #: 2017.) The two issues are somewhat interrelated.

<u>A.  Whether RFC was Supported by Substantial Evidence</u>

The first issue raised by Morrow is whether the ALJ's RFC finding regarding his ability to do light work is supported by substantial evidence.  (R. 13, PageID #: 2017, 2026-2031.)  Morrow contends that the RFC inaccurately portrays his capacities with regard to standing and walking. *Id.* at 2026-2027.  The RFC found that Morrow had the capacity to perform light work, with limitations.  (R. 8, tr., at 16.)  One such limitation the ALJ adopted is:  "This individual should use a cane for ambulating distances greater than 50 feet." *Id.*  Morrow asserts that the evidence proves that he cannot perform the standing and walking required of light work, thus his RFC should be for no more than sedentary activity.  (R. 13, PageID #: 2027.)

The ALJ has the responsibility for reviewing all the evidence in making his or her determinations.  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  The ALJ evaluates every medical opinion received in evidence.  20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ will consider any statements that have been provided by medical sources, whether or not based on formal medical examinations.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Although the ALJ reviews and considers all the evidence before her, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ.  20 C.F.R. §§ 404.1546(c), 416.946(c).

In addition, state agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).  An ALJ is required to evaluate medical opinions,

regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight. *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007) (ALJ must evaluate each medical opinion in the record); *Walton v. Commissioner*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ may properly give more weight to the opinions of consultative sources where she determines that the treating physicians' opinions are not well-supported by the objective medical records. *Dyer v. Social Sec. Admin.*, No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014)

In this case, the ALJ heard testimony from a medical expert at the January 2017 hearing. (R. 8, tr., at 73-104, 113.) Medical expert testimony consistent with the evidence of record constitutes substantial evidence to support the Commissioner's decision. *Carroll v. Astrue*, No. 1:09CV1232, 2010 WL 2643420, at *12 (N.D. Ohio July 1, 2010) (citing *Barker v. Shalala*, 40 F.3d 789, 794-795 (6th Cir. 1994); *Atterberry v. Sec'y, HHS*, 871 F.2d 567, 570 (6th Cir. 1989)); *see also Schuler v. Commissioner*, No. 03-3734, 2004 WL 2030280, at *4 (6th Cir. Sept. 8, 2004); *Hale v. Sec'y, HHS*, 816 F.2d 1078, 1083 (6th Cir. 1987) (per curiam). An ALJ may rely on the opinion of a medical expert to resolve conflicts in the medical evidence. *See Schuler*, 2004 WL 2030280, at *4*; *Hale*, 816 F.2d at 1083.

Morrow puts forward several arguments in support of his contention that the ALJ's determination that he can perform light work is in error. Morrow asserts that the RFC's provision that he should be allowed the use of a cane for distances

greater than 50 feet is "arbitrary and lacks a logical bridge to the evidence." (R. 13, PageID #: 2026-2027.) The claimant also argues that he cannot perform the standing and walking required of light work, because "it involves the use of the arms whereas Plaintiff's arms are restricted through use of a cane." *Id.* at 2027. Morrow contends that the ALJ failed to credit multiple treatment notes indicating he "suffers from imbalance and dizziness, has an impaired gait, and requires an assistive device at all times for ambulation <u>and</u> support." *Id.* at 2027-2028 (citing record) (emphasis in original). Morrow claims that the ALJ's consideration of the evidence is "cursory and contradictory," and her selective evaluation of the record constitutes "cherry-picking" to overlook evidence that could support a more restrictive RFC. *Id.* at 2029-2030.

The ALJ's decision addressed Morrow's capacity for walking several times:

Later records show that the claimant was initially using a walker for long distance ambulation (Exhibit 3F). This is consistent with other records that make note of an assistive device (see generally Exhibit 11F at 34, Exhibit 12F at 24, 29, 35, 59, 64). The claimant did report some improvement by early 2013 (Exhibit 3F at 2). At one point, the claimant was able to walk without any assistive device (Exhibit 12F at 64). However, there are some instances of positive Romberg testing, and a neurological examination resulted in an assessment of an increased fall risk, though not a 100 percent risk of falling (see generally Exhibit 11F at 37; Exhibit 12F at 35). Regardless, the claimant's neurological examinations were largely normal (Exhibit 11F at 4, 12; Exhibit 12F at 49, 63; Exhibit 15F). Eventually, the claimant did return to physical therapy (Exhibit 17F).

(R. 8, tr., at 17-18.) The ALJ noted a December 2013 physical exam, at which "Romberg was negative and he ambulated in the room without an assistive device." *Id.* at 18, *see id.* at 1018. The physician at that exam discussed with claimant the

18

importance of going to physical therapy to work on balance training. *Id.* at 1019. The ALJ also noted that Morrow was documented as having a normal gait, with no mention of muscular problems, limitations, or use of a cane, on at least two other occasions, in August 2014 and January 2015. *Id.*, citing tr., at 944, 1176. The ALJ stated: "The foregoing is persuasive evidence the claimant is capable of ambulating more often without cane than he has reported." *Id.*

The ALJ noted that Morrow presented to CNP Nash on March 3, 2015, with a cane "due to imbalance issues post stroke in 2012." (R. 8, tr., at 18, citing tr., at 1230, 1232.) The claimant asked for a prescription for a cane at this visit because he was using a friend's cane. *Id.* at 1233. The ALJ concluded that the need for an assistive device is supported by the record, though "only to the extent noted above" [*i.e.,* for long distance walking]. *Id.* at 19; *see also id*, at 17.

Regarding opinion evidence, the ALJ addressed the opinion of CNP Edwards that stated that claimant has limitations in sitting, standing, walking, lifting, and all postural activities. (R. 8, tr., at 19, citing tr., at 713-714.) The ALJ gave Edwards' opinion some weight, explaining that:

> Most limitations, such as lifting, were vague and did not specify the degree of limitation. In postural activities, she indicated that the claimant could rarely or never perform such activities. This is inconsistent with physical examinations showing few or no deficits in these areas. Additionally, the claimant has had several negative Romberg tests, in addition to the few positive ones. Therefore, while some limitations are supported, the degree opined here is not wholly consistent with the record as a whole.

*Id.* at 19.

Although Morrow does not attack the weight that the ALJ assigned to Edwards' opinion, Edwards' medical source statement is not entitled to any particular deference. Under the regulations that were in effect at the time[2] that Morrow's claim was filed and adjudicated, "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The regulations list five categories of "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a) (2016), 416.913(a) (2016); *see also* SSR 06-3p. At the time of the regulations in effect when the ALJ rendered her decision, a nurse practitioner was not an "acceptable medical source," but was rather considered an "other source." *McNamara v. Commissioner*, No. 15-1231, 2015 WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (per curiam) (citing 20 C.F.R. § 416.913(d)(1)); *see also Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050 at *4 (6th Cir. Nov. 16, 2015). Because a nurse practitioner is not considered an "acceptable medical source" under the regulations, an ALJ is not required to give any special deference to statements from a nurse practitioner.

---

[2] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

*Noto*, 2015 WL 7253050 at *4 (citing *Walters*, 127 F.3d at 530; *Engebrecht v. Commissioner*, 572 Fed.Appx. 392, 397-398 (6th Cir. 2014)); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007).  The ALJ has discretion to assign the information any weight she determines appropriate based on the evidence of record. *Id.*

The ALJ also noted that the medical expert Dr. Pi "opined that a cane was needed for walking longer distances over 50 feet." (R. 8, tr., at 20.)  The ALJ stated that Dr. Pi had the opportunity to review the whole record before forming an opinion, and the ALJ gave the doctor's opinion great weight because it was supported by and consistent with the record.  *Id.  See generally Carroll*, 2010 WL 2643420, at *12 (citing *Barker*, 40 F.3d at 794-795; *Atterberry*, 871 F.2d at 570) (medical expert testimony consistent with evidence of record constitutes substantial evidence); *see also Schuler*, 2004 WL 2030280, at *4; *Hale*, 816 F.2d at 1083.

The state agency medical consultants had opined that claimant could perform light work, with limitations, and the ALJ assigned these opinions partial weight. (R. 8, tr., at 20.)  The ALJ indicated that the evidence showed claimant had some limitations, including difficulty balancing, however, he continued to have normal strength and neurological examinations.  *Id.*

The court dismisses Morrow's argument that the ALJ's "attempt to be specific (50 feet) is arbitrary" and has no basis in substantial evidence.  (R. 13, PageID #: 2026-2027.)  On his Function Report, Morrow himself stated that he could walk about 50 feet before needing to stop and rest.  (R. 8, tr., at 376.)  The medical expert Dr. Pi testified that claimant only needed a cane for walking greater than 50 feet.

(R. 8, tr., at 20, 91.) The ALJ's RFC that Morrow "should use a cane for ambulating distances greater than 50 feet" (R. 8, tr., at 16) is supported by substantial evidence.

Morrow argues that he cannot do light work because he cannot use his hands and arms because he uses a cane. (R. 13, PageID #: 2027.) He contends that use of the hands is required to grasp, hold, and turn objects in light work. *Id.,* citing SSR 83-10. Counsel explored this theory at the hearing, during her questioning of Dr. Pi, the medical expert:

> Q. So if he's walking in a small room, less than 50 feet so long as there's nothing in his hands or he didn't have to do anything with his hands?
>
> A. No, he can do things with his hands.
>
> Q. But if he had to walk.
>
> A. * * * * * I think he can walk safely around 50 feet, carrying small objects, weights, you know, up to 20 pounds should not be a problem.
>
> Q. Without a cane?
>
> A. Without a cane, in short distance.

(R. 8, tr., at 103-104.) In other words, Dr. Pi testified that Morrow can walk safely, without a cane, for about 50 feet, even while using his hands to carry up to twenty pounds. *Id.*

The claimant does not point to any contrary opinion evidence of record that Morrow would be limited or restricted in the use of his hands because of the use of a cane. *See generally* R. 13, PageID #: 2027-2030. In fact, to the contrary, the medical source statement of CNP Edwards indicated that, despite needing a cane,

claimant can frequently perform manipulation involving his hands such as handling and fine and gross manipulation. (R. 8, tr., at 714.) The reviewing physicians found that the claimant had no manipulative limitations. *Id.* at 123, 152.

Morrow also contends that the evidence establishes significant ongoing imbalance from his stroke, with resulting limitations that impair his ability to stand and walk necessary for light work. (R. 13, PageID #: 2030-2031.) The only specific limitation identified is the purported requirement of "an assistive device at all times for ambulation and support." *Id.* at 2028. As discussed more fully in Section B. below, the ALJ reasonably considered conflicting evidence and did not commit error.

The claimant points to evidence that could support a contrary conclusion to the ALJ's determination. (R. 13, PageID #: 2027-2030.) The relevant issue, however, is not whether there is evidence to support a ruling different than that reached by the ALJ. *Lebro ex rel. R.L. v. Commissioner*, No. 1:13CV1355, 2014 WL 3749221, at *11 (N.D. Ohio July 29, 2014). The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion. *See Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Martin ex rel. Martin v. Chater*, 91 F.3d 144, 1996 WL 428403, at *4 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

The ALJ's determination that Morrow was capable of performing light work is supported by substantial evidence in the record. The court notes the RFC did not clear Morrow for unrestricted work. His imbalance issues were recognized in several limitations set forth in the RFC: avoiding all exposure to unprotected heights and hazardous moving machinery; avoiding jobs that require a fast production pace; and the use of a cane for ambulating distances greater than 50 feet. (R. 8, tr., at 16.) The ALJ concluded that the need for an assistive device is supported by the record, though only to the extent discussed above. *Id.* at 19.

### B. Whether Cane Needed for All Ambulation, Balance and Support

The second issue raised by Morrow is whether substantial evidence demonstrates the need for a cane for all ambulation, balance, and support. (R. 13, PageID #: 2017, 2031-2033.) The claimant contends that in finding Morrow capable of light work, "not only does the ALJ err in determining he is capable to performing the necessary standing and walking, she also errs by stating he only requires the use of a cane beyond 50 feet of walking." *Id.* at 2031, citing R. 8, tr., at 16, 20. The court addressed the issue of a cane in part as relevant in the preceding discussion of Morrow's RFC for light work.

In addition, a cane is medically necessary when there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." S.S.R. 96-9p, 1996 WL 374185, at *7;

24

*see, e.g.*, *Abling v. Commissioner*, No. 2:18CV105, 2018 WL 4103166, at *8 (S.D. Ohio Aug. 29, 2018); *Grimes v. Berryhill*, No. 3:17CV365, 2018 WL 2305723, at *3 (E.D. Tenn. Apr. 19, 2018), adopted by, 2018 WL 2305704 (E.D. Tenn. May 21, 2018); *Penn v. Astrue*, No. 2:09CV169, 2010 WL 547491, at *5 (S.D. Ohio Feb. 12, 2010). A claimant's own subjective statements are insufficient to establish that a cane is medically required. *See, e.g.*, *Abling*, 2018 WL 4103166, at *8; *Grimes*, 2018 WL 2305723, at *3.

When a cane is not a necessary device for the claimant's use, it cannot be considered an exertional limitation that reduces claimant's ability to work. *Carreon v. Massanari*, No. 01-3552, 2002 WL 31654581, at *2 (6th Cir. Nov. 21, 2002); *Grimes*, 2018 WL 2305723, at *3 (citing *Carreon*); *Simmons v. Commissioner*, No. 1:12CV2591, 2013 WL 3873952, at *11 (N.D. Ohio July 25, 2013) .

Morrow asserts that "strong evidence" shows the need for a cane, and that three physical therapy evaluations each identify claimant as a fall risk, requiring the use of an ambulatory aid for walking and support. (R. 13, PageID #: 2031, citing MER.) Two of the three evaluations cited were done by PT Farrell. (R. 8, tr., at 858-863, 1930-1936.)

Farrell, as a physical therapist, is not an "acceptable medical source" within the meaning of the regulations and cannot render a "medical opinion." *Kilburn v. Commissioner*, No. 1:17CV603, 2018 WL 4693951, at *11 (S.D. Ohio Sept. 29, 2018); *Sisky v. Colvin*, No. 5:15CV1208, 2016 WL 4418104, at *8 (N.D. Ohio Aug. 19, 2016); *see also* 20 C.F.R. § 404.1513(a); SSR 06-3p, 2006 WL 2329939, at *1.

Because a physical therapist is not considered an "acceptable medical source" under the regulations, an ALJ is not required to give any special deference to the physical therapist's neurological evaluations. *Kilburn*, 2018 WL 4693951, at *11 (citing *Nierzwick v. Commissioner*, 7 Fed. Appx. 358, 363 (6th Cir. 2001)); *Turner v. Colvin*, Civ. No. 5:11-254, 2015 WL 5474081, at *5 (E.D. Ky. Sept. 16, 2015).

In any event, Morrow overstates the evidence in many of the cited records, when he contends that an ambulatory aid was "required." (R. 13, PageID #: 2031.) In several of the cited instances, the provider merely observed Morrow using a cane or walker, without imposing a requirement that he do so. *See, e.g.*, R. 8, tr., at 695 (he is now walking using a walker), 858 (reports using cane at times), 1930 (reports ambulation in home with cane). The provider in other instances recommended that claimant continue to use a walker or cane, as needed, without explicitly stating that such was medically necessary (*id.* at 863, 1394). The doctor's notes in one cited instance (several months after his stroke) record that, although he was using a walker, Morrow's gait was normal and stable, and there was no ataxia or Romberg sign present, although his gait showed some imbalance. *Id.* at 695.

The ALJ recognized, in her recitation of the medical evidence of record, that there was conflicting evidence concerning claimant's use of, or need for, a cane. *See generally* R. 8, tr., at 17-18. Where there is conflicting evidence concerning the need for a cane, it is the ALJ's task, and not this court's, to resolve conflicts in the evidence. *Starr v. Commissioner*, No. 1:17CV2576, 2018 WL 4290786, at *11 (N.D. Ohio Aug. 22, 2018), adopted by 2018 WL 4283052 (N.D. Ohio Sept. 7, 2018);

26

*Foreman v. Commissioner*, No. 2:10CV1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012); *see generally Wright*, 321 F.3d at 614 (court's role is not to resolve conflicting evidence in the record). Moreover, an ALJ may rely on the opinion of a medical expert to resolve conflicts in the medical evidence. *See Schuler*, 2004 WL 2030280, at *4; *Hale*, 816 F.2d at 1083. The medical expert Dr. Pi testified that she believed the claimant's use of a cane was necessary at this time, but only for "longer walking," that is, distances beyond 50 feet. (R. 8, tr., at 90-91, 104.)

Morrow again asserts that the basis for the RFC finding the use of a cane required only for distances beyond 50 feet is an arbitrary determination, not based on any medical opinion. (R. 13, PageID #: 2031.) As discussed above, Morrow himself had stated that he could walk about 50 feet (R. 8, tr., at 376), and the medical expert, based on her review of the record, testified that claimant only needed a cane for walking greater than 50 feet (R. 8, tr., at 20, 91). The RFC that Morrow should use a cane for distances greater than 50 feet (R. 8, tr., at 16) is supported by substantial evidence.

The ALJ accommodated Morrow's use of a cane in the RFC, and "this is therefore not a case where the ALJ entirely overlooked references in the record or in relevant testimony to the plaintiff's use of a cane or a walker." *Abling*, 2018 WL 4103166, at *9. Morrow's imbalance issues and the need for limited use of a cane were recognized in several limitations set forth in the RFC, as mentioned earlier. (R. 8, tr., at 16.) The ALJ concluded that the need for a cane is supported by the

record, though only to the extent of ambulating distances greater than 50 feet. *Id.* at 16, 19.

The court finds the ALJ's RFC is supported by substantial evidence, and the record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the ALJ's RFC determination. *See Kirk, 667 F.2d at 535* (quoting *Richardson, 402 U.S. at 401*).

## VIII. CONCLUSION

The court finds that the ALJ's RFC is supported by substantial evidence and plaintiff's arguments lack sufficient merit to necessitate a remand. The decision of the Commissioner is affirmed for the aforementioned reasons.

<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge

Date: <u>March 29, 2019</u>